(33 App. Div. 401.)

### DAVIS v. NEW YORK STEAM CO.

(Supreme Court, Appellate Division, First Department. October 21, 1898.)

1. CONTRACTS—CONSTRUCTION—ENTIRETY—TIMES FOR PAYMENT.

An architect made a written offer to prepare plans and specifications for certain buildings, to supervise the work, and to make final duty test, for 3 per cent. on total cost of the work, with "payments to be made on monthly estimates." Defendant accepted the offer in writing, adding thereto, "Conditioned on this agreement terminating in 24 months." Held, that the contract fixed the time of payment, since the words, "payments to be made on monthly estimates" meant payments each month of 3 per cent. on the estimated cost of each month's work, especially when considered in connection with the terms of defendant's acceptance.

2. SAME—EVIDENCE OF CUSTOM.

Evidence of a custom entitling architects, on completion of the plans and specifications, to 2 per cent. of the total estimated cost of the work, is not admissible, where the contract expressly provides for a compensation of 3 per cent. on the total cost of the work, with payments to be made on monthly estimates.

3. PAROL EVIDENCE—CONTEMPORANEOUS AGREEMENTS.

Parol evidence of conversations preceding and accompanying the execution of a written contract, tending to show a contemporaneous parol agreement as to the time of payment, is inadmissible to vary the terms of the contract as to payment, where such terms are unambiguous.

Appeal from special term.

Action by Lewis K. Davis against the New York Steam Company. From a judgment of the special term dismissing the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Brainard Tolles, for appellant.

James W. Hawes, for respondent.

BARRETT, J.   This action is brought to foreclose a mechanic's lien filed against property of the defendant, with respect to which the plaintiff alleges that he performed certain work, as architect and consulting engineer, pursuant to a contract with the defendant executed on the 15th day of May, 1896.   The contract is in the form of an offer and acceptance, which read as follows:

"Proposal for Engineering Work.

"New York Steam Company, No. 2 Cortlandt Street, New York City, N. Y.— Gentlemen:  Learning that you are contemplating the erection of a new power plant at 59 & 60th Sts., I beg leave to make formal application for the engineering work needed in connection with same, namely: To prepare plans and specifications for the buildings, foundations, coal hoppers and coal-handling machinery, pipe connections, and to formulate such contracts as will insure you against faulty workmanship and design, to supervise the work during construction, and make final duty test, for the sum of three (3%) per cent. on total cost of the work.  Further, to lay out, subject to approval, and supervise in so far as may be desired, the construction and arrangement of boilers, for one (1%) per cent. on cost of said boilers.

"Respectfully,                                      Lewis K. Davis.

"New York, May 13th, 1896.

"Payments to be made on monthly estimates.

"Accepted, conditioned upon this agreement terminating in twenty-four months from June 1st, 1896.        The New York Steam Co.,

"By W. C. Andrews, President.

"Agreed to May 15th, '96.

"Lewis K. Davis."

The plaintiff contends that this contract merely defines the aggregate amount of his compensation, without fixing the time of payment.   This view, if correct, substantially eliminates from the contract words which the plaintiff himself placed there, namely, the words, "Payments to be made on monthly estimates."   It is insisted that these latter words, standing by themselves, have no definite, ascertainable meaning, that they are not self-explanatory, and that the court cannot, from a mere reading of the phrase in question, say what it means.   We think these difficulties are imaginary.   The words seem to us to be quite free from ambiguity.   Indeed, the entire contract appears to be clear and simple.   The plaintiff offered to do his part for "the sum of three per cent. on total cost of the work."   He was unwilling to wait for this 3 per cent. until the completion of the work, so he added the words quoted.   What did he mean by those words?   Payments of what?   Monthly estimates of what?   Plainly, proportionate payments of his compensation, to be made upon monthly estimates of each month's progressive work.   In other words, payments each month of 3 per cent. upon the estimated cost of each month's work.   This construction is accentuated by the form and substance of the defendant's acceptance.   It will be observed that the defendant accepts the offer, conditioned upon the agreement terminating in 24 months from June 1, 1896, and that the plaintiff subjoins his agreement to this latter condition.   This condition relates plainly to the running and continuous payments contemplated by the

previous words. The defendant was seemingly unwilling to continue those monthly payments indefinitely. It wished such payments, as well as the plaintiff's services, to stop in 24 months from June 1, 1896, whether the work was then completed or not. The original language of the offer as to services and compensation was thus modified and limited, and the contract reduced to an agreement for service to run through 24 months, at a monthly compensation of 3 per cent. upon the cost of each month's completed work, as shown by monthly estimates thereof. It is said that this contract, if thus construed, would enable the defendant to defraud the plaintiff by postponing the work until June 1, 1898. It is quite probable that such delay, made in bad faith, would be a breach of the contract for which the defendant could be compelled to respond in damages. Such fraudulent action, however, is not to be presumed, and its possibility cannot affect the plain language of the contract. As the plaintiff gave no evidence of any such monthly estimates, nor of any fact entitling him to payment upon this construction of the contract, his complaint was properly dismissed. His action ignored any such construction, and was brought upon an entirely different theory, namely, that he was entitled to 2 per cent. upon the estimated total cost of the work. When the action was commenced he had completed the plans and specifications, and he was allowed to introduce evidence of a custom entitling architects, under contracts of this general nature, upon such completion, to 2 per cent. of the total estimated cost of the work. This evidence should not have been admitted, but, in view of the trial judge's final decision, it was harmless. Such evidence of custom was in direct conflict with the written agreement of the parties, and plainly the latter must govern. An additional argument is advanced in support of this evidence of custom. It is said that the words, "Payments to be made on monthly estimates," relate to the plaintiff's supervisory work, and not to the preparation of plans and specifications; that as to the latter the custom should govern, while as to the former the effect which we have indicated may be given to this phrase of the contract. This argument is specious, but unsound. It is impossible to split the plaintiff's services up in the manner suggested. The parties contemplated nothing of the kind. For the totality of his work the plaintiff was to receive compensation, regulated and defined, both as to time and amount. That was the contract he chose to make, and it cannot be varied by parol or custom.

Testimony was also admitted of conversations preceding and accompanying the execution of the contract, tending to show a contemporaneous parol agreement as to the time of payment analogous to that covered by the custom. As the contract was free from ambiguity, this evidence was also inadmissible. If admissible, however, it did not aid the plaintiff, as his testimony on that head was sufficiently met by that introduced by the defendant. We cannot say, upon a review of this evidence, that he proved such contemporaneous agreement by a preponderance of testimony. Certainly the finding of the learned trial judge against him on this issue cannot be disturbed.

In the view which we have taken of the contract and of the evidence,

it is not necessary to consider the underlying question as to whether the plaintiff is entitled to the protection of the mechanic's lien law.

The judgment was right, and should be affirmed, with costs. All concur.

