630

## COLE et al. v. DeBOBULA.

### No. 198.

Municipal Court of Appeals for the
District of Columbia.

Aug. 7, 1944.

Thomas A. Farrell and A. P. Conniff,
both of Washington, D. C., for appellants.

Samuel W. McCart, of Washington, D.
C., for appellee.

Before RICHARDSON, Chief Judge,
and CAYTON and HOOD, Associate
Judges.

RICHARDSON, Chief Judge.

Appellee, plaintiff below, sued for the
contract price of his services as architect.
The case was tried by the court without a
jury and judgment entered for plaintiff.
Defendants have appealed.

November 22, 1943, plaintiff submitted
to defendants a written proposal for his
employment "as architect in preparing plans
and specifications of the contemplated al-
terations and additional construction" of a
building under lease to defendants, op-
erated by them as a rooming house. After
acknowledging a payment of $100 and pro-
viding for the payment of an additional
$150, his letter continued: "Both the
above amounts are part of my fee which
will be figured as set forth in the rules of
professional practice of architects and
schedule of charges as adopted on January
14, 1914 by the American Institute of Ar-
chitects, which rules and schedule are made
a part of this agreement."

Defendants' acceptance of this offer was
endorsed thereon. Plaintiff acknowledged
receipt of the stipulated cash payments and
his suit was for a balance based on the
estimated cost of the completed work.

Plaintiff made a survey of the premises
and had photographs and blueprints pre-
pared of the building in its existing condi-
tion. On December 24, 1943, he submitted
these blueprints and photographs to de-
fendants; he also furnished them an out-
line of the work to be performed, which
listed the refinishing of floors and wood-
work on two floors, erection of a storm
vestibule, repairs to inside and outside of
the building, installation of lights in halls
and corridors, installing a bar, modernizing
the pantry and kitchen, and building a cor-
ridor and six rooms in the garret. This
statement after listing the scope of the
work, substantially as above, added: "As
required or requested detailed drawings.

and specifications will be furnished for any work mentioned above." However, no drawings or specifications for the alterations or other work to be performed under the contract were prepared or furnished.

Independently of their contract with plaintiff, defendants employed a contractor to make certain changes in the ladies' powder room in the basement of the building. This work was not included in plaintiff's contract, and he was charged with no duty in connection with its planning or supervision. He testified that in December he became aware that the pipes along the ceiling in this room were being concealed by a wooden framework to be covered with fabric. This construction, he stated, would be in violation of the building regulations, and he informed the defendants of that fact; also notified the building inspector's office that the violation existed. He admitted that he had no control over this work but claimed "that he was responsible on this job to see that for the entire structure the building code was complied with." Nothing in his contract imposed this responsibility. On January 8, 1944, he terminated his employment by oral notice and confirmed this by letter wherein he stated:

"Please, be advised that I terminate my commission to act as your Architect for the following reasons:

I found that conditions contrary to the District law existed on the premises and on my report to you they were not remedied.

I can not shoulder responsibility, legal or other, for the acts of an other person acting in the capacity of contractor, constructor, designer or workman, without authority from me.

Accordingly I hereby render my final bill which I ask you to pay without undue delay.

Balance of last bill ...............$650.
As per provisions of 4.............$750.
As per 7 ........................$100.
                                  _____
       Total ...................$1,500."

After being covered with fireproof fabric and completed, the work he criticized was inspected and approved by the proper authorities of the District Government.

Plaintiff's right to recover compensation under his contract depends upon the answer to this question: Was he justified in terminating his services under the contract for the reason he assigned, or, stated conversely, was his verbal notice, confirmed by letter, without legal justification, thus placing him in the position of one who has failed and refused to perform the contractual services for which he sues?

The contract between the parties formed the basis of their relationship and must be accepted by us as the controlling guide in considering their conduct.[1] Its pertinent language is simple and very clear. Plaintiff was to prepare "plans and specifications" for "the contemplated alterations and additional constructions." Doubtful or indefinite terms in a contract may be clarified and defined by parol evidence[2] or by the interpretation of the parties as evidenced by their acts.[3] Here plaintiff testified he had no supervision or control over work in the basement, where the powder room was located. Before any controversy arose he had furnished defendants a written statement listing, without mention of the powder room, the several items included in his contract.

Nor was any custom or usage shown which would justify an implication of responsibility for all work performed in a building, merely because plaintiff was retained as architect on other work in the same building.

We find nothing in plaintiff's contract, expressed or implied, connecting him in any way with the construction work he claimed violated the building code, imposing any duty or responsibility on him for its continuance or abatement. His notice to his employers and to the building inspector fulfilled any moral or ethical duty on his part and adequately protected him against possible future unwarranted criticism.

The alleged illegality, relating to a matter wholly collateral to his employment, could have no effect upon the validity of his contract, his duty to perform it, or his right to compensation; nor, if illegal, did it constitute a breach of his contract by defendants, entitling him to rescind.[4] In

[1] Fontano v. Robbins, 22 App.D.C. 253, 266.

[2] Fox v. Johnson & Wimsatt, 75 U.S. App.D.C. 211, 127 F.2d 729 (footnote 12).

[3] Harten v. Loffler, 212 U.S. 397, 29 S.Ct. 351, 53 L.Ed. 568, affirming 29 App.D.C. 490; Green v. Obergfell, 73 App.D.C. 298, 121 F.2d 46, 138 A.L.R. 258.

[4] Hanover National Bank v. First National Bank, 8 Cir., 109 F. 421; Alter

our opinion his action, without a "fair, solid and substantial cause" for terminating his contract, was unreasonable and arbitrary.[5]

We can only regard plaintiff's act as a voluntary abandonment of performance. "One who has voluntarily failed to complete a piece of work to be done under a special contract for an entire sum is without remedy."[6]

While the seeming harshness of the rule has been mitigated by an increasing tendency of the courts to recognize exceptions, this may only be justified where "a substantial benefit has accrued to the defendant by part performance."[7] Here, where no plans or specifications of the contemplated work were prepared, where the only product of plaintiff's efforts submitted to defendants was the reproduction of the existing building by photographs and blueprints intended to be used by plaintiff in preparing plans, the value to defendants, if any, was negligible. Whether plaintiff's conduct was wilful or resulted from a misunderstanding of the mutual rights of the parties, we find no basis for the award of compensation.

Reversed.

v. Clark, D.C.Nev., 193 F. 153; Clinton v. Boehm, 139 App.Div. 73, 124 N. Y.S. 789.

[5] State v. Then, 114 N.J.L. 413, 177 A. 87, 90. See also United States v. Lotempio, D.C.W.D.N.Y., 58 F.2d 358; State v. Davidson, 116 N.J.L. 325, 184 A. 330.

[6] Sipley v. Stickney, 190 Mass. 43, 76 N.E. 226, 227, 5 L.R.A.,N.S., 469, 112

Am.St.Rep. 309, 5 Ann.Cas. 611; United States v. United States Fidelity & Guaranty Co., 236 U.S. 512, 35 S.Ct. 298, 59 L.Ed. 696; Heinse v. Howard, 153 Md. 380, 138 A. 255. See Williston on Contracts, Rev.Ed., Sec. 1475.

[7] Williston on Contracts, Rev.Ed.Secs. 1473, 1475; 12 Am.Jur., Contracts, Sec. 344; In re A. W. Cowen & Bros., 2 Cir., 11 F.2d 692.