## BRIER v. ORENBERG.

### No. 1222.

Municipal Court of Appeals for the District of Columbia.

Argued July 14, 1952.

Decided August 5, 1952.

George Greenberg, Washington, D. C., for appellant.

Irving A. Levine, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

By an instrument in writing Brier, to whom we shall refer as seller, contracted to sell his grocery business to Orenberg, to whom we shall refer as buyer. The sale was not completed on the date fixed for settlement and some two weeks thereafter the buyer sued the seller, claiming that he had breached his contract. He demanded $500 which was the amount fixed in the contract as liquidated damages to be paid by either party for a breach. The trial court ruled in favor of plaintiff-buyer and seller appeals.

The contract was dated September 12, 1951, and contained this proviso:

"The date of settlement is hereby ·fixed as of the date that all of the contingencies herein shall be met but not later than September 18, 1951."

The only contingencies (aside from the terms of payment, etc.) were the transfer of seller's restaurant license and occupancy permit, and the procuring of a valid assignment of the lease on the premises from the landlord. Seller's attorney attempted to procure the assignment of the lease by communicating with the lessor who was then in Florida. The assignment had not been obtained when the settlement date, September 18, arrived and the buyer refused to close the deal without it. Seller demanded settlement then, and also once or twice on the days immediately following, and each time buyer refused because no lease assignment had been received. Two or three days after the date fixed for settlement, and buyer still refusing to settle without the lease assignment, seller told him "the deal was off."

■ We first consider the ruling of the trial judge that "time was not of the essence of the contract." The contract fixed a deadline for closing of the deal "not later than September 18, 1951" and provided that it was "contingent in its entirety" upon the assignment of the lease, (and on the other contingency which is not here involved). This, quite clearly, made the securing of the lease assignment a condition precedent: a fact which must exist or occur before a duty of immediate performance of a promise could arise. Creighton v. Brown, D.C. Mun.App., 77 A.2d 559; Restatement, Contracts, § 250 (1932).

When the settlement date arrived and the assignment had not been obtained buyer was clearly within his rights in refusing to settle. He was not required to borrow trouble of the future by taking over a store without the protection of the lease. On the other hand he had no right to demand, as he said he did, that the deal be held in abeyance until the lease assignment was obtained.

At that stage of the transaction the agreed time for settlement could have been extended to a future day only by mutual consent, for either party then had the right to call the deal off. Occurrence of the condition at some later date would not have entitled either party to demand performance. And we note that there was no attempt to prove that the lease was ever assigned; thus the condition precedent has remained unperformed. In these circumstances we think it was error to hold that "time was not of the essence," for this was to ignore the express time limit stipulated between the parties in advance. See Soldano v. Holmes, D.C.Mun.App., 60 A.2d 535; Restatement, Contracts, § 276(b) (1932); 3 Williston, Contracts, § 847 (Revised ed. 1936).

■ Much of what we have·just said relates as well to another major question on this appeal: whether the trial judge was in error in ruling that the seller had defaulted and should be subjected to the payment of liquidated damages. As we have already observed the seller had no right to demand performance by the buyer until the condition precedent had been performed and the lease assignment was in his hands. Therefore when the assignment had not been received on the settlement date the rights of both parties were at an end and the contract stood discharged unless they both agreed to an extension of time. But there was no such agreement. Seller was insisting that buyer settle then and await the later receipt of the lease assignment; buyer was insisting that the deal be held

open.[1] We think each of the parties was then insisting on rights he did not have. They were both in a position where performance had been frustrated by the non-action of the landlord, a stranger to their contract. But when they first contracted together both assumed the risk of such non-action. We conclude that it was error to rule that the seller had defaulted. Creighton v. Brown, supra; Restatement, Contracts §§ 395, 250(a), 257 (1932); 3 Williston, Contracts, § 633 et seq., § 1970 (Revised ed. 1936).

Reversed.

---

1. As provided by the contract buyer was in daily attendance in the store, monitoring records of receipts and disbursements.